UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBBY MACDONALD, an individual,<br><br>Plaintiff,<br><br>v.<br><br>THE BOEING COMPANY, a corporate entity form unknown, and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 8:24-cv-01087-JWH-DFMx<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF No. 28]** |

Before the Court is the motion of Defendant The Boeing Company for summary judgment.[1] The Court conducted a hearing on the Motion in July 2025. After considering the papers filed in support and in opposition,[2] as well as the argument of counsel at the hearing, the Court **GRANTS** the Motion, for the reasons set forth herein.

## I.  PROCEDURAL BACKGROUND

Plaintiff Robby MacDonald commenced this action in Orange County Superior Court in February 2024.[3] He asserted the following nine claims for relief against his former employer, Boeing:

- discrimination in violation of the Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code §§ 12940 *et seq.*;
- failure to accommodate in violation of FEHA, Cal. Gov't Code § 12940(m);
- failure to engage in the interactive process in violation of FEHA, Cal. Gov't Code § 12940(n);
- age discrimination in violation of FEHA;
- sexual orientation discrimination in violation of FEHA;
- failure to prevent discrimination in violation of FEHA, Cal. Gov't Code § 12940(k);
- retaliation in violation of FEHA, Cal. Gov't Code § 12940(h);
- wrongful termination; and

---

[1]  *See* Def.'s Mot. for Summ. J. (the "Motion") [ECF No. 28].

[2]  The Court considered the documents of record in this action, including the following papers:  (1) Compl. (the "Complaint") [ECF No. 1-2]; (2) Motion; (3) Joint Statement of Undisputed Facts (the "Joint Statement") [ECF No. 28-2]; (4) Joint Ex. (the "Joint Exhibit") [ECF No. 28-4]; (5) Pl.'s Opp'n to the Motion (the "Opposition") [ECF No. 30]; and (6) Def.'s Reply in Supp. of the Motion (the "Reply") [ECF No. 31].

[3]  *See generally* Complaint.

- violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.* (the "UCL").

Boeing removed the action to this Court in May 2024.[4] It filed the instant Motion one year later, in May 2025.[5]

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the non-moving party. *See Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). The substantive law determines the facts that are material. *See id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* Factual disputes that are "irrelevant or unnecessary" are not counted. *Id.* A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Under that standard, the moving party has the initial burden of informing the court of the basis for its motion and identifying the portions of the pleadings and the record that it believes demonstrate the absence of an issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the non-

---

[4] *See* Notice of Removal [ECF No. 1].
[5] *See generally* Motion.

moving party's case. *See id.* at 325. Instead, the moving party need only prove there is an absence of evidence to support the nonmoving party's case. *See id.*; *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). The party seeking summary judgment must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson*, 477 U.S. at 250.

If the moving party sustains its burden, the non-moving party must then show that there is a genuine issue of material fact that must be resolved at trial. *See Celotex*, 477 U.S. at 324. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." *Oracle Corp. Sec. Litig.*, 627 F.3d at 387 (citing *Anderson*, 477 U.S. at 252). The non-moving party must make that showing on all matters placed at issue by the motion as to which it has the burden of proof at trial. *See Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 252.

Furthermore, a party "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Advisory Committee Notes, 2010 Amendment, to Fed. R. Civ. P. 56. Reports and declarations in support of an opposition to summary judgment may be considered only if they comply with Rule 56(c) of the Federal Rules of Civil Procedure, which requires that they "be made on personal knowledge, set forth facts that would be admissible evidence, and show affirmatively that the declarant is competent to testify to the matters stated therein." *Nadler v. Nature's Way Prod., LLC*, 2015 WL 12791504, at *1 (C.D. Cal. Jan. 30, 2015); *see also Loomis v. Cornish*, 836 F.3d 991, 996–97 (9th Cir.

2016) (noting that hearsay statements do not enter into the analysis on summary judgment).

### III.  FACTUTAL BACKGROUND

The material facts set forth below are sufficiently supported by admissible evidence and are uncontroverted. They are "admitted to exist without controversy" for the purpose of summary judgment. *See* Fed. R. Civ. P. 56(e)(2); L.R. 56-3. The Court deems a fact undisputed when the parties' "disputes" of that fact are merely restatements of the same fact, they do not actually contradict the substance of a fact, or they argue the relevancy and materiality of an otherwise undisputed fact. *See* Fed. R. Civ. P. 56(e)(2); L.R. 56-3.[6]

**A.   July 2021 Retirement Announcement**

MacDonald began his employment with Boeing in November 1998.[7] In July 2021, while he was working as a Supplier Program Manager, MacDonald emailed his supervisor, Paul Bell, to inform Bell that MacDonald's family wanted MacDonald to "separate" himself from Boeing "on account of severe health concerns."[8] MacDonald explained to Bell that MacDonald would be

---

[6]   The parties object to multiple items of evidence filed with the Motion. "[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself"; they are thus "redundant" and need not be considered. *Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006); *see also Anderson*, 477 U.S. at 248 ("Factual disputes that are irrelevant or unnecessary will not be counted."). The Court therefore **OVERRULES** all such objections. Additionally, the Court need not consider some of the evidence to which the parties have objected in order to decide the Motion. Objections not specifically addressed are **OVERRULED**.

[7]   *See* Joint Statement, No. 1.

[8]   *Id.* at Nos. 2, 4, & 5.

unable to travel in the near future, he said that his family was "pushing for permanent separation," and he asked whether Bell was "in a position to discuss what options [MacDonald] ha[d]."[9]

According to Bell, he and MacDonald had a phone conversation the following day to discuss MacDonald's plans to retire; MacDonald does not remember the conversation, but he testified that he "sure hope[d]" that it happened.[10] And it appears that the conversation *did* happen: later that same day, Bell transmitted an email to MacDonald thanking him for the conversation and informing MacDonald that "[i]f traveling [was] not an option, [Bell] would need for [MacDonald] to provide [Bell] medical determination so that [Bell] [could] work a reasonable accommodation."[11] Bell also provided a link for MacDonald to upload medical documentation, but MacDonald never provided any such information.[12] Rather, MacDonald emailed several of his coworkers to inform them that he was "no longer engaged" and was "in the process of selecting [his] exit date."[13]

Later that month, MacDonald notified Bell that MacDonald intended his exit date to be October 1, 2021.[14] MacDonald later testified that he was unsure whether, when he referred to that "exit date," he meant that he would be exiting from a particular program at Boeing or exiting from the company entirely; nevertheless, Bell began to search for MacDonald's replacement.[15] Bell

---

[9]   *Id.* at No. 5.
[10]  *Id.* at No. 6.
[11]  *Id.* at No. 7.
[12]  *Id.* at Nos. 8 & 9.
[13]  *Id.* at No. 10.
[14]  *Id.* at No. 13.
[15]  *Id.* at Nos. 13 & 14.

eventually hired Thomas Evatt, who was then 64 years old, to replace MacDonald.[16] MacDonald and Evatt are approximately the same age, and MacDonald testified that he helped to train Evatt in order to ensure "as much knowledge transfer" as possible before his retirement.[17]

### B.  October 2021 Retirement Announcement

Due to health issues that his wife suffered at the time, MacDonald did not retire on October 1, 2021.[18] But later that month, MacDonald emailed his coworkers—including Bell and Evatt—to inform them that he would be visiting his children in Mexico in an effort to "ease [himself] into retirement one step at a time."[19] MacDonald also informed Bell that MacDonald was working with the Human Resources department to finalize his retirement and that he was projecting to retire by mid-January 2022.[20] MacDonald further explained that he planned to retire once he had "an all clear" with respect to his wife's health issues because he needed his "wife cancer free before [he could] afford the change in insurance."[21] MacDonald conveyed to Bell that he expected the all-clear to happen by mid-January 2022 but that that date could "change based on health conditions."[22]

### C.  January 2022 Retirement Announcement

In mid-January 2022, MacDonald sent an email to several of his coworkers—including Bell—to inform them that his wife's health issues had

---

[16]  *Id.* at Nos. 22 & 23.

[17]  *Id.* at No. 24; *see also* Joint Exhibit, Ex. Y (the "MacDonald Deposition") 94:18-23.

[18]  *See* Joint Statement, Nos. 31 & 88.

[19]  *See id.* at No. 32.

[20]  *Id.* at No. 33.

[21]  *Id.* at Nos. 88 & 89.

[22]  *Id.*

been resolved and that, "[b]ased on the successful survival and prospering of [his] spouse," it was time for him to "take a different path."[23] MacDonald wrote that he would be a "free agent on April 1st," that "[p]aperwork [was] in work," and that his "target date of cessation of effort [was] March 24" with a "drop dead date [of] March 31st."[24] MacDonald further explained that "there [were] approximately 10 weeks" until March 24, 2025, that he had "8 weeks of [paid time off]," that he intended to use all of his time off, and that he had only "2 weeks of work time" left or "about 3 days left to work."[25]

In early February 2022, Bell asked to discuss that plan with MacDonald, in part because Boeing needed to determine the "timing of picking up [MacDonald's] laptop, phone, credit card, and any other company asset in [MacDonald's] possession."[26] In response, MacDonald agreed that he "need[ed] to know where to drop off the computing equipment and phone etc." in view of his impending retirement date.[27] MacDonald also informed Bell that he wanted to "get it done sooner rather than later," and he inquired whether he needed to provide Bell with anything other than retirement paperwork, which MacDonald was "trying to fill out now."[28] MacDonald informed Bell that, unless there was anything else that Bell needed from MacDonald, MacDonald would be on paid time off until March 24, 2022.[29] Bell did not ask for any other information from MacDonald; instead, Bell confirmed that MacDonald was

---

[23]    *Id.* at No. 41.

[24]    *Id.*

[25]    Joint Exhibit, Ex. I ("Exhibit I").

[26]    *Id.*

[27]    *Id.*

[28]    Joint Statement, No. 43.

[29]    *Id.*

-8-

"using PTO" until MacDonald's last day of work.[30]  In view of that fact,  Bell told MacDonald that he could "pre-load all of [MacDonald's] remaining days with PTO" and that someone in California would reach out to MacDonald "to retrieve [MacDonald's] assets."[31]

Later that month, while he was on vacation in Mexico, MacDonald notified Bell that "[d]ue to recent test results," his voluntary retirement date was "potentially at risk of slipping."[32]  MacDonald did not explain what those test results were, and he did not mention his wife's cancer diagnosis or health issues.[33]  MacDonald later testified that those test results, whatever they may have been, did not belong to his wife and that they were unrelated to her health issues.[34]  Bell, who had already hired MacDonald's replacement—Evatt— emailed a Human Resources representative to request guidance because the "continuous churn [was] unmanageable from a business planning perspective."[35]

Several days later, MacDonald—who was still on paid time off— requested medical leave for a non-work-related health issue.[36]  Boeing approved the leave, which extended beyond MacDonald's retirement date.[37]  Boeing did not process MacDonald's retirement while he remained on medical leave,[38] but

---

[30]   *Id.*

[31]   *Id.* at No. 44; Exhibit I.

[32]   Joint Statement, No. 45; Exhibit I.

[33]   *See* Exhibit I.

[34]   *See* MacDonald Deposition 132:22-25.

[35]   Joint Statement, No. 47.

[36]   *Id.* at No. 48.

[37]   *Id.* at Nos. 49 & 50.

[38]   *Id.* at No. 51.

-9-

there is no evidence that MacDonald informed Boeing that he had reconsidered his retirement plans.[39] Similarly, MacDonald never followed up with Bell regarding the potential that MacDonald's retirement date would "slip[]."[40]

In early June 2022, MacDonald prepared to return from medical leave, and, in relation to his return, he inquired about obtaining a standing desk.[41] A Boeing accommodations services representative who was unaware of MacDonald's retirement responded, but MacDonald did not follow up with her.[42] Approximately one week later, another Boeing representative, who was also unaware of MacDonald's retirement, also reached out to MacDonald.[43] Again, MacDonald did not respond, but the representative followed up.[44] MacDonald then replied to advise the representative that he was no longer at Boeing but that he was very impressed with the representative's work ethic.[45]

MacDonald's retirement was finalized on June 16, 2022.[46] MacDonald received retirement payments from Boeing for five months, then he began working for another company.[47] MacDonald remains eligible to be rehired at Boeing, and he has never attempted to rescind his retirement.[48]

---

[39] *See* MacDonald Deposition 188:1-4.
[40] *See* Exhibit I.
[41] Joint Statement, No. 53.
[42] *Id.* at Nos. 52-54.
[43] *Id.* at No. 55.
[44] *Id.* at Nos. 56 & 57.
[45] *Id.* at No. 58.
[46] *Id.* at No. 62.
[47] *See* MacDonald Deposition 148:18-23.
[48] Joint Statement, No. 64.

## IV. ANALYSIS

Boeing moves for summary judgment on all of MacDonald's claims because, in Boeing's view, MacDonald never suffered any adverse employment action and MacDonald was never denied an accommodation.[49] The Court agrees.

### A. Discrimination, Age Discrimination, Sexual Orientation Discrimination, Failure to Prevent Discrimination, Retaliation, Wrongful Termination, and UCL (Claims 1 & 4-9)

The court applies the *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), burden-shifting framework to claims asserted under FEHA. *See Trop v. Sony Pictures Entertainment, Inc.*, 129 Cal. App. 4th 1133, 1144 (2005). Under that framework, "the plaintiff must make out a prima facie case." *Weil v. Citizens Telecom Servs. Co., LLC*, 922 F.3d 993, 1002 (9th Cir. 2019) (citing *McDonnell Douglas*, 411 U.S. at 802).

In a disability discrimination case, a plaintiff may make out a *prima facie* case by showing "that he or she (1) suffered from a disability, or was regarded as suffering from a disability; (2) could perform the essential duties of the job with or without reasonable accommodations; and (3) was subjected to an adverse employment action because of the disability or perceived disability." *Sandell v. Taylor-Listug, Inc.*, 188 Cal. App. 4th 297, 310 (2010). For other types of discrimination claims, plaintiffs must show "(1) that they are members of a protected class; (2) that they were qualified for their positions and performing their jobs satisfactorily; (3) that they experienced adverse employment actions; and (4) that similarly situated individuals outside their protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Hawn v.*

---

[49] *See generally* Motion.

-11-

*Executive Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010) (alterations adopted and quotation omitted).

"Once the prima facie case is made," the burden "shifts to the defendant to articulate a 'legitimate, nondiscriminatory reason' for its action." *Weil*, 922 F.3d at 1002. If the defendant provides a nondiscriminatory reason, the burden shifts back to the plaintiff, who "must produce evidence that the defendant's 'proffered nondiscriminatory reason is merely a pretext for discrimination.'" *Id.* (quoting *Dominguez-Curry v. Nev. Transp. Dept.*, 424 F.3d 1027, 1037 (9th Cir. 2005)).

The standard for establishing a retaliation claim is similar to the standard for establishing a discrimination claim. To succeed on a FEHA retaliation claim, a plaintiff/employee must show "(1) the employee engaged in protected activity; (2) the employee was subjected to an adverse employment action; and (3) a causal link between the protected activity and adverse action." *Tandon v. GN Audio USA, Inc.*, 2021 WL 242916, at *8 (N.D. Cal. Jan. 25, 2021) (citing *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005)). Like discrimination and harassment claims, retaliation claims are subject to the *McDonnell Douglas* burden-shifting framework. *See Moore v. Regents of Univ. of Cal.*, 248 Cal. App. 4th 216, 248 (2016).

The parties largely agree that, for the purpose of the instant Motion, the sole issue in dispute is whether MacDonald suffered an adverse employment action. According to MacDonald, a reasonable dispute exists regarding that issue because MacDonald was involuntarily terminated in June 2021. Specifically, MacDonald contends that, although he repeatedly announced his intent to retire—and although he did in fact intend to retire—he was nevertheless involuntarily terminated after he became disabled.[50] MacDonald

---

[50] *See generally* Opposition.

-12-

further argues that "there is no reasonable interpretation of the undisputed evidence that would support [Boeing's] contention that [MacDonald's] separation from Boeing was preceded by [MacDonald's] retirement or resignation" and that "the evidence related to [MacDonald's] separation reflects that there was an involuntary termination."[51]

If such evidence exists, the Court is unable to locate it in the documents that the parties submitted. Nowhere in the Joint Statement or Joint Exhibit is there any email, document, or testimony suggesting that MacDonald was fired from Boeing or that MacDonald's disability, sexual orientation, or age played a role in his termination. In asserting otherwise, MacDonald relies on the following facts: (1) that MacDonald never submitted any of his retirement paperwork; (2) that an unsigned separation agreement was provided to MacDonald in June 2022 and, in that separation agreement, Boeing stated that it would process MacDonald's departure as an involuntary termination; and (3) that MacDonald informed Bell on February 17, 2022, that MacDonald's retirement date was "at risk of slipping" due to "test results."[52]

Those facts are insufficient to create a genuine dispute regarding the basis for MacDonald's departure. First, the fact that MacDonald failed to complete his retirement paperwork is immaterial. A Human Resources representative testified that a manager may submit retirement information for an employee,[53] and it is undisputed that MacDonald left on vacation shortly after confirming his plan to retire, that MacDonald had not yet completed his paperwork at that time, and that Bell told MacDonald that he need not take his work computer

---

[51] *Id.* at 22:8-11.

[52] *See* Joint Exhibit, Ex. 7 (the "Separation Agreement").

[53] *Id.*, Ex. O (the "Lipsky Deposition") 28:20-29:3.

with him on vacation.[54] In view of those facts, MacDonald's failure to return his paperwork does not create a material disputed fact.

Second, MacDonald contends that the Separation Agreement proves that Boeing knew that MacDonald no longer wanted to retire, but it chose to enforce MacDonald's retirement date anyway, which means that Boeing terminated MacDonald involuntarily. But the Separation Agreement was provided to MacDonald *after* MacDonald met with Bell and Boeing's Human Resources Department in June 2022.[55] It is undisputed that, by that time, Boeing learned that MacDonald no longer wanted to retire and that Boeing had decided to honor MacDonald's retirement date anyway. Thus, the Separation Agreement is not probative of any material fact.

Third, MacDonald interprets Bell's choice to forward MacDonald's February 15, 2022, email to a Human Resources representative to mean several things: (1) that the condition precedent to MacDonald's retirement—his wife's successful recovery—was no longer satisfied; (2) that Bell knew that MacDonald no longer planned to retire; (3) that Bell decided to terminate MacDonald anyway; and (4) that Bell's decision was based upon MacDonald becoming disabled.[56] But that chain of inferences requires too many links, and nearly all of them are broken. For example, although MacDonald believes that the "test results" reference notified Bell that MacDonald's wife was experiencing more health issues, MacDonald testified that those "test results" had nothing to do with his wife.[57] Similarly, while MacDonald's email suggested that he might not want to retire by April 1, 2022, MacDonald never followed up

---

[54] *See* Joint Statement, No. 43; Exhibit I.

[55] *See* Separation Agreement.

[56] *See* Exhibit I.

[57] MacDonald Deposition 132:22-25.

-14-

with Bell about moving his retirement date.[58] And, in view of MacDonald's history of shifting retirement dates and the long-filled position, Bell's "continuous churn" comment was far more innocuous than MacDonald suggests.

More importantly, even if a reasonable juror *could* interpret the February 15, 2022, emails as proof that Boeing decided to terminate MacDonald involuntarily, there is no evidence that Boeing took that action because of MacDonald's disability. As MacDonald acknowledges, he became disabled on February 17, 2022—two days after he informed Bell that his retirement date was "at risk of slipping."[59] But MacDonald also contends that Bell made the decision to terminate MacDonald immediately after MacDonald sent the February 15, 2022, email.[60] Thus, even taking MacDonald's version of the facts as true, Boeing decided to terminate MacDonald *before* MacDonald became disabled, which means that no reasonable juror could conclude that MacDonald's disability played any part in that decision.

Ultimately, it is undisputed that (1) MacDonald informed Bell in October 2021 that he intended to retire in early 2022; (2) MacDonald reiterated that plan in January 2022, at which time he informed Bell that his last day of work would be March 24, 2022, and that MacDonald would be on vacation between February 8, 2022, and March 24, 2022; (3) MacDonald in fact took paid time off that began on February 8, 2022; (4) MacDonald remained on paid time off until he took approved medical leave beginning in February 2022; (5) MacDonald remained on medical leave until June 2022; (6) prior to MacDonald's return from medical leave in June 2022, he never informed Bell or any other supervisor

---

[58] See Exhibit I.

[59] See id.

[60] Joint Statement, No. 47.

that he no longer planned to retire; and (7) MacDonald knew that his role was already filled, in part because he helped to train his own replacement. Based upon those facts, no reasonable juror could conclude that MacDonald's departure from Boeing resulted from anything other than MacDonald's own, well-documented plan to retire.

Accordingly, Boeing's Motion is **GRANTED** with respect to MacDonald's claims for discrimination, retaliation, and wrongful termination.[61] Additionally, because MacDonald's discrimination and retaliation claim fail, Boeing is also entitled to summary judgment on MacDonald's UCL claim, which is derivative of MacDonald's other claims.

**B.      Failure to Accommodate and Failure to Engage in the Interactive Process (Claims 2 & 3).**

Boeing also argues that it is entitled to summary judgment on MacDonald's claims for failure to accommodate and failure to engage in the interactive process because it is undisputed that Boeing did not, at any point, fail to accommodate MacDonald's disability.

FEHA provides that it is unlawful for an employer "to fail to make reasonable accommodation for the known physical or mental disability of an" employee. Cal. Gov't Code § 12940(m). The "essential elements" of a claim for failure to accommodate "are: (1) the plaintiff has a disability covered by FEHA; (2) the plaintiff is a qualified individual; and (3) the employer failed to reasonably accommodate the plaintiff's disability." *Taylor v. Trees, Inc.*, 58 F. Supp. 3d 1092, 1111 (E.D. Cal. 2014). "A plaintiff is a 'qualified individual' if he can perform the essential functions of the desired job either with or without accommodation." *Id.* (quoting *Cuiellette v. City of Los Angeles*, 194 Cal. App. 4th

---

[61] MacDonald concedes that two of those claims—age discrimination and sexual orientation discrimination—are not supported by substantial evidence and that they should be dismissed. *See* Opposition 36:13-20.

-16-

757, 766 (2011)). "To face liability under [Cal. Gov't Code] section 12940(m), an employer must have been aware of the employee's disability." *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 799 (N.D. Cal. 2015).

Additionally, California law provides that an employer must "engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee [] with a known physical or mental disability or known medical condition." Cal. Gov't Code § 12940(n). "To prevail on a claim for failure to engage in the interactive process, the employee must identify a reasonable accommodation that would have been available at the time the interactive process occurred." *Nealy v. City of Santa Monica*, 234 Cal. App. 4th 359, 379 (2015).

MacDonald's claims for failure to accommodate and failure to engage in the interactive process relate to the medical problem that MacDonald experienced while he was on vacation in Mexico, for which MacDonald requested medical leave and, after that medical leave ended, a standing desk.[62] It is undisputed that Boeing approved MacDonald's medical leave—and that Boeing permitted MacDonald to remain on medical leave beyond his planned retirement date—but MacDonald contends that Boeing refused to provide him a standing desk.[63]

Because MacDonald's retirement date passed before he requested his standing desk, MacDonald's accommodation claims necessarily fail. But even if that were not the case, there is no evidence that Boeing refused to accommodate MacDonald's disability. To the contrary, that Boeing accommodation services representatives, who were unaware of MacDonald's retirement, repeatedly

---

[62] *See id.* at 29:9-20.

[63] *Id.* at 29:9-30:2.

reached out to MacDonald about his request for a standing desk, but MacDonald failed to respond.[64] Thus, Boeing never denied MacDonald's request, and MacDonald—*not* Boeing—failed to engage with Boeing while Boeing attempted to process MacDonald's request.

Accordingly, Boeing's Motion is **GRANTED** with respect to MacDonald's claims for failure to accommodate and failure to engage in the interactive process.

## V. DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. Boeing's instant Motion [ECF No. 28] is **GRANTED**.
2. Judgment will issue accordingly.

**IT IS SO ORDERED.**

Dated: December 1, 2025

John W. Holcomb
UNITED STATES DISTRICT JUDGE

---

[64] See Joint Statement, No. 57.